UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:13-cr-190-ORL-37KRS

CLAYTON DAVID REYNOLDS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, Acting United States Attorney for the Middle District of Florida, and the defendant, CLAYTON DAVID REYNOLDS, and the attorney for the defendant, Rick Jancha, mutually agree as follows:

### A. Particularized Terms

#### 1. Count Pleading To

The defendant shall enter a plea of guilty to Count Two of the Indictment. Count Two charges the defendant with false impersonation of a law enforcement officer acting under the authority of the United States, in violation of 18 U.S.C. § 912.

#### 2. Maximum Penalties

Count Two carries a maximum sentence of three years imprisonment, a fine of $250,000, a term of supervised release of not more than one year, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with

Defendant's Initials    AF Approval

respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count Two are:

First: That the Defendant falsely assumed or pretended to be an officer or employee acting under the authority of the United States, as charged;

Second: That, while pretending to be a federal officer or employee, the Defendant acted as such; and

Third: That the Defendant did so knowingly and willfully with intent to deceive or defraud another.

4. Counts Dismissed

At the time of sentencing, the remaining count against the defendant, Count One, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials 

2



6. Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

7. Acceptance of Responsibility - Two Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

B. **Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make

Defendant's Initials _____

3



restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the


Defendant's Initials ____

4

background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

4. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the

Defendant's Initials 

5



defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

5. <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not

Defendant's Initials 

6

such decision is consistent with the government's recommendations contained herein.

6. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

7. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials 

7



## 8. Filing of Agreement

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

## 9. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if

Defendant's Initials _____

8



defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

10. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

11. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials 

9



## 12. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 24th day of October, 2013

A. LEE BENTLEY, III
Acting United States Attorney

_____
CLAYTON DAVID REYNOLDS
Defendant

_____
Andrew C. Searle
Assistant United States Attorney

_____
Rick Jancha
Attorney for Defendant

_____
Carlos A. Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____

10

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:13-cr-190-ORL-37KRS

CLAYTON DAVID REYNOLDS

## PERSONALIZATION OF ELEMENTS

1. On or about December 1, 2011, in Volusia County, Florida, in the Middle District of Florida, did you falsely assume or pretend to be an officer or employee acting under the authority of the United States, that is, a federal law enforcement officer with full law enforcement powers?

2. While pretending to be that federal officer or employee, did you act as such?

3. Did you do so knowingly and willfully and with intent to deceive or defraud another?

Defendant's Initials _____

1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:13-cr-190-ORL-37KRS

CLAYTON DAVID REYNOLDS

## FACTUAL BASIS[1]

Through the Federal Flight Deck Officer (FFDO) Program, the Transportation Security Administration (TSA) provides a badge, a credential, and a firearm to commercial pilots who are selected to be FFDOs, and confers upon the FFDOs the following limited law enforcement powers: (a) FFDOs are considered law enforcement officers only for the purposes of carrying firearms and using force to defend the flight deck of an aircraft from air piracy or criminal violence; (b) FFDOs are not granted or authorized to exercise other law enforcement powers, such as the power to make arrests or seize evidence, or to otherwise act as a federal law enforcement officer outside the jurisdiction of aircraft flight decks; and (c) FFDOs are only authorized to transport secured firearms in any state for a flight on which they are flying to or from as approved by the Federal Air Marshal Service and as necessary for their participation and

---

[1] The factual basis is prepared by the United States and does not include all of the facts relevant to the defendant's involvement in the crime to which the defendant is
pleading guilty and other illegal activities in which the defendant may have been involved.

Defendant's Initials _____    1



activities in the program. Commercial pilots can apply online to become FFDOs through the TSA website.

On or about October 2009, REYNOLDS applied online to become an FFDO and was thereafter accepted by the TSA into the FFDO program. On or about April 10, 2010, REYNOLDS completed the FFDO training program and signed the Deputation Appointment, Oath of Office form, in which he affirmed that he would transport and carry a firearm only as authorized by the deputation and use force only as authorized by law. Thereafter, the TSA issued REYNOLDS a firearm, a badge, and a credential.

On or about December 1, 2011, in Volusia County, Florida, REYNOLDS represented himself to be a federal agent, outside the jurisdiction of an aircraft flight or deck, and detained an individual, using his TSA-issued firearm. Thereafter, REYNOLDS falsely represented himself to be a Department of Homeland Security (DHS), TSA law enforcement officer and agent with full law enforcement powers to Deland Police Department (DPD) officers.

Specifically, on December 1, 2011, REYNOLDS was running errands in the Orlando or Lake Mary area and had in his possession his TSA-issued firearm. After completing his errands, REYNOLDS was traveling in his vehicle, eastbound on Interstate-4 (I-4), towards Deland. While on I-4, REYNOLDS had the firearm holstered, in the passenger compartment of his vehicle. REYNOLDS' possession of the firearm was in clear violation of the FFDO rules described

Defendant's Initials _____

2



above, as REYNOLDS was not traveling to or from a flight or to or from his participation in activities for the program.

At approximately 7:48 p.m., while still on I-4 east, REYNOLDS observed another vehicle driving in a reckless manner. This other vehicle was operated by an individual referred to herein as P.F. REYNOLDS called 911 from his cellular telephone and described himself to the operators as an off-duty law enforcement officer and a federal law enforcement officer. REYNOLDS followed P.F.'s vehicle for approximately 15 to 20 minutes, exiting I-4. During this pursuit, REYNOLDS drove past several alternative routes which would have led him to his home in Deland. As the vehicles approached Deland, P.F. slowed down and REYNOLDS continued to follow P.F. While speaking to the 911 dispatchers, REYNOLDS used police codes and mentioned that he was previously a police officer. REYNOLDS was recorded in the 911 call, stating that it had been seven years since he has "been on the road so it's kind of exciting."

At the intersection of Virginia Avenue and New York Avenue, near Gram's Kitchen, in Deland, P.F. stopped and REYNOLDS pulled behind P.F.'s vehicle in a tactical manner consistent with a police traffic stop. REYNOLDS opened his driver-side door, grabbed his firearm from the driver-side door panel, and removed it from the holster. While exiting his vehicle, REYNOLDS observed P.F. exit and reach towards his waistband. REYNOLDS stood behind the opened driver-side door and pointed his firearm at P.F. REYNOLDS was still on the phone with the 911 dispatcher, and was overheard identifying himself as a

Defendant's Initials 

3



federal agent and giving P.F. verbal commands. Initially, P.F. did not comply with REYNOLDS' commands and walked behind his vehicle, towards the passenger-side, where he dropped a drug pipe on the ground. P.F. then walked back to the rear of his vehicle and complied with REYNOLDS' commands. REYNOLDS told the 911 operator that he observed drugs and that he had P.F. at "gunpoint." REYNOLDS was also recorded identifying himself as being with Homeland Security and informing P.F. of the reasons he stopped him. REYNOLDS approached P.F. and ordered him to kneel on the ground, cross his legs, and put his hands on top of his head with his fingers interlaced. P.F. complied and REYNOLDS stood behind him and put his hand on top of P.F.'s hands in a tactical position of dominance.

The 911 dispatcher advised REYNOLDS to secure his weapon before the arrival of DPD officers who were responding to the scene. Shortly thereafter, two DPD officers arrived in separate vehicles. Upon arrival at the scene, the officers observed REYNOLDS detaining P.F. One officer, who arrived slightly ahead of the other, observed REYNOLDS holding the firearm in his hand. This officer asked REYNOLDS to holster the weapon and REYNOLDS placed the firearm in a holster that was in his waistband and was visible. REYNOLDS displayed his FFDO badge and credentials and identified himself as an agent with the DHS.

Based on the foregoing, the arriving officers believed that REYNOLDS was a law enforcement officer with full law enforcement powers. An officer

Defendant's Initials     4

approached P.F. and handcuffed him. REYNOLDS informed one of the officers about the drug pipe P.F. had discarded on the ground.

After P.F. was handcuffed, REYNOLDS spoke to an officer about the events leading up to P.F.'s detention. During this conversation, REYNOLDS claimed to be a "U.S. Flight Marshal." A third DPD officer arrived, and REYNOLDS provided this officer with a sworn statement regarding the events of that night. REYNOLDS told her that he worked for Homeland Security and showed her his FFDO badge and credential. As REYNOLDS was writing his sworn statement, the officer asked him about his job and he replied, "It's stuff I cannot talk about. I just came back from Kuwait last week." In his sworn statement, REYNOLDS described himself as an off-duty "Fed LEO" and admitted to identifying himself as a "LEO" to P.F.

After completing his sworn statement, REYNOLDS approached P.F. who was handcuffed, identified himself as "Agent Reynolds," and admonished him for not obeying the commands of a law enforcement officer – telling him when a law enforcement officer gives you a command, you better follow it or someone could get hurt. P.F. was charged with possession of drug paraphernalia and given a notice to appear. Following the incident, REYNOLDS went home and then went out again to meet with friends. He did not report the incident to the TSA. In addition, at no point did REYNOLDS inform the DPD officers that he was an FFDO or that his law enforcement powers were limited as set forth above.

Defendant's Initials _CN_

5



On December 2, 2011, DPD Detective Timothy Hughes began investigating REYNOLDS. Detective Hughes contacted the Federal Air Marshal Service and learned that REYNOLDS was an FFDO, not an Air Marshal. The detective also verified that REYNOLDS did not have the authority to detain, arrest, or search individuals or to conduct traffic stops or investigate criminal activity. On that same date, TSA Operations Center notified Assistant Federal Security Director (AFSD) James Punchard of REYNOLDS' actions on the previous night. AFSD Punchard is a federal law enforcement officer with TSA, whose responsibilities include ensuring that FFDOs comply with the rules of the program and do not misuse their TSA-issued equipment. ASFD Punchard was assigned to interview REYNOLDS regarding the incident and to take custody of his FFDO issued weapon, credential, and badge.

Later on December 2, 2011, Detective Hughes and TSA AFSD Punchard located REYNOLDS at his residence in Deland. Upon meeting REYNOLDS, Detective Hughes and AFSD Punchard introduced themselves to REYNOLDS. Punchard explained to REYNOLDS that he was there to take custody of the FFDO issued equipment while the investigation into the incident was pending. REYNOLDS told AFSD Punchard and Detective Hughes that the firearm was in his vehicle, where REYNOLDS left it from the previous night. Detective Hughes collected the weapon and REYNOLDS told AFSD Punchard that he usually carries the firearm in the trunk of his vehicle. REYNOLDS also turned over his FFDO credentials, badge, and two magazine clips for the firearm.

Defendant's Initials _____



Detective Hughes and AFSD Punchard conducted a joint interview of REYNOLDS, with Detective Hughes questioning REYNOLDS and Punchard observing. During the interview, which was audio recorded, REYNOLDS described the December 1, 2011 incident, including his detention of P.F. REYNOLDS admitted that he identified himself to P.F. as a "federal agent," and placed P.F. into a tactical detention position at gunpoint. He further admitted that he flashed his FFDO badge and credentials, and told a DPD officer he worked for "Homeland Security." REYNOLDS also acknowledged, in his sworn written statement, that, as an FFDO, he did not have the authority to detain, search, or arrest anyone.

REYNOLDS also made false statements and representations to Detective Hughes and AFSD Punchard, including claiming that the reason he had his TSA-issued firearm with him on December 1, 2011 was because he was on his way home from firearms training.

On January 11, 2012, SAs Burnett and Edgardo Rosado interviewed REYNOLDS at a DHS, OIG Sub Office. In that interview, REYNOLDS acknowledged that an FFDO did not have any law enforcement authority outside of an airplane. REYNOLDS also admitted to detaining P.F. on December 1, 2011 and to representing himself to be a law enforcement officer, a federal agent, or a DHS officer during the incident. REYNOLDS further admitted that he was not training with the firearm as he previously had told Detective Hughes.

Defendant's Initials ⟨signature⟩

7



REYNOLDS agrees and acknowledges that at all times relevant to this case, he was not a federal law enforcement officer with full law enforcement powers and was not acting under the authority of the United States, as he falsely assumed and pretended to be on December 1, 2011.

Defendant's Initials 

8